IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| FARHAN MOHAMMED,<br><br>    Plaintiff,<br><br>vs.<br><br>CLARKE AMERICAN,<br><br>    Defendant. | ORDER GRANTING JOINT STIPULATION WITH PREJUDICE AND OVERRULING OBJECTION TO MEDIATION AGREEMENT<br><br><br><br>Case No. 2:05-CV-00468 PGC |

    Plaintiff Farhan Mohammed filed a complaint with the court in May 2005 alleging numerous violations of Title VII employment discrimination by defendant Clarke American. Prior to an answer being filed by Clarke American, or any trial dates being set, Mr. Mohammed's counsel moved to withdraw as counsel in the case. Mr. Mohammed then proceeded pro se, until the case went to mediation under the provisions of DUCivR 16-2.

    Mediation between the parties then took place on March 17, 2006. The mediation, according to Mr. Mohammed, took nine hours, and the parties reached an agreement at that time. Mr. Mohammed signed the joint stipulation with dismissal, along with his counsel, on that same day. In that joint stipulation which is signed by Mr. Mohammed, both parties jointly agreed and stipulated that Mr. Mohammed's action against Clarke American would be dismissed with

prejudice, and each party would bear their own costs and attorneys' fees (#40).  This stipulation was filed with the court on March 21, 2006.  Mr. Mohammed also made additions and changes to the settlement agreement prior to signing this agreement.

On March 20, 2006, Mr. Mohammed filed an objection to the mediation agreement and requested expedited review by the court (#39).  In that objection, Mr. Mohammed makes several claims.  Initially, he claims that he "felt psychologically pressured, [and] threatened and that the settlement agreement was reached under coercion."[1]  As the basis for this allegation, he states that during the mediation both his own counsel and the mediator discouraged him by commenting on the merits of his case.  He also told both the mediator and his counsel that he was unable to continue due to "shock he felt after seeing Clarke American's affidavits," and stated that he wanted to take time to understand the veracity of these affidavits.[2]

Turning to the affidavits, Mr. Mohammed questioned the veracity of Clarke American's affidavits provided during the mediation.  He claims that when he spoke to witnesses on speaker phone during the mediation, these witnesses "spoke in favor of [Mr. Mohammed] which denied the statements on the affidavits."[3]  Mr. Mohammed specifically alleges that Clarke American and its counsel "lost their credibility by presenting false affidavits during the mediation."[4]  Finally, he states that he was in shock after seeing these false affidavits, and that he was unable to continue the mediation at that time.

---

[1] Mr. Mohammed's Objection to Mediation Agreement, Docket No. 39, at 1 (Mar. 20, 2006).

[2] *Id*. at 1-2.

[3] *Id*. at 2.

[4] *Id*.

Although unable to continue, Mr. Mohammed apparently made a final offer and the parties reached an agreement. Given the stipulated agreement to dismiss the case, which is signed by Mr. Mohammed, it is clear to the court that an agreement was reached after an offer was presented and that offer was accepted. And given that Mr. Mohammed signed the agreement, dated March 17, 2006, the court is left with an presumptively valid contract between the parties.

Mr. Mohammed also claims that he felt threatened because "he was reminded over and over that [Clarke American] would bring criminal charges and counter claims against [him] regarding . . . tuition reimbursement documents if the case [was] not settled."[5] Mr. Mohammed, using the passive verb, does not indicate who reminded him about this possibility, nor does he indicate whether these charges had any merit or were merely frivolous claims made by whomever had reminded him. The settlement agreement, filed under seal, does not indicate the merits of such claims, but includes as a written addition that Clarke American would release Mr. Mohammed for any and all claims relating to tuition assistance reimbursements. In addition, Mr. Mohammed claims that he "was not given more time to think about [a settlement] and was pressured that he was given all day [for the mediation] and was" asked why he did not want to settle if he had come to mediate.[6] Finally, Mr. Mohammed claims that he was told by his attorney that "he would have to accept and sign the settlement agreement since there was verbal acceptance of the settlement offer by" Clarke American.[7]

---

[5] *Id*.

[6] *Id*.

[7] *Id*.

Because of all these claims and allegations, Mr. Mohammed requests the court to consider the settlement agreement void and to allow the case to proceed. He also requests additional time to amend his complaint and file it with the court, and desires to bring additional Title VII claims regardless of previous agreements he made to dismiss all but his Title VII retaliation claims. Clarke American denies all of these claims, requests bifurcation of the different requests by Mr. Mohammed, and argues that Mr. Mohammed's claims are without merit.

First, it is not disputed that the parties, each being represented by counsel, entered into mediation. It is also undisputed that settlement documents were signed by the parties and their attorneys at the conclusion of the mediation. Now Mr. Mohammed alleges that settlement was not voluntary, that Clarke American offered false documents and veiled threats, and that both the mediator and his counsel discouraged him from further pursuing his case.

"An agreement to settle a lawsuit, voluntarily entered into, is binding upon the parties, whether or not made in the presence of the [court], and even in the absence of a writing."[8] Such a "settlement agreement itself is a contract, separate and independent from the dispute giving rise to the lawsuit which is settled."[9] In determining whether this settlement agreement is binding and enforceable on the parties, the court will follow Utah law. Under Utah contract law, if "a party's manifestation of assent is induced by either a fraudulent or a material misrepresentation by the other party upon which the recipient is justified in relying, the contract is voidable by the

---

[8] *Cooper-Jarett, Inc. v. Cent. Transport Inc.*, 726 F.3d 93, 96 (3d. Cir. 1984) (quotations omitted).

[9] *Id.*

recipient."[10]  "Competency to enter a contract is measured by whether the mental facilities [were] so deficient or impaired that there was not sufficient power to comprehend the subject of the contract, its nature, and its probable consequences."[11]  And according to Utah law, "'[s]ettlement agreements may be summarily enforced without an evidentiary hearing.'"[12]

According to the submissions by Mr. Mohammed, there is no allegation that the mediator or his counsel blocked his way or impeded his ability to leave the mediation conference at any time.  He was free to leave at any time and was never put under any physical or emotional duress that would impair his ability to leave the mediation.  Mr. Mohammed's claims establish little more than the fact that he was stressed during the mediation, as would be expected during periods of intense legal negotiations.  He provides no argument that he was not competent to sign the settlement agreement, nor does he provide any allegation that the "shock" he suffered caused any incompetency prior to signing the agreement.

Indeed, Mr. Mohammed also fails to allege that Clarke American threatened him directly with criminal prosecution for allegedly fraudulent tuition reimbursement documents – an understandable omission, given that criminal charges in Utah can only be filed by the state.  Nor does he allege that any criminal charges would have been frivolous or without any basis. He provides no further evidence, proof, or other affidavits, other than his own allegations in his filed objection, that Clarke American's submitted affidavits were fraudulent, incorrect, or lacked any

---

[10] *Peterson v. Coca-Cola USA*, 48 P.3d 941, 946 (Utah 2002).

[11] *Id*. (quotations omitted).

[12] *Foster v. Montgomery*, 82 P.3d 191, 196 (Ut. Ct. App. 2003) (quoting *Goodmansen v. Liberty Vending Sys.*, 866 P.2d 581, 584 n.2 (Ut Ct. App. 1993)).

basis. And he clearly did not rely on these affidavits when signing the settlement agreement, because he felt he had proven these affidavits to be false.[13] Mr. Mohammed does not allege that he entered into the settlement agreement while relying on these fraudulent affidavits, because he alleges he knew them to be false. Finally, his allegation that the mediator and his counsel "discouraged" him during the mediation does not rise to the level of duress, fraud, or a material misrepresentation.

      Although Mr. Mohammed was likely disappointed by some of the events during the mediation, all of his claims, even if proven true, do not rise to the level of duress, fraud, or material misrepresentation that would necessitate invalidation of the settlement agreement. Mr. Mohammed stayed at the mediation for nine hours, even though he was completely free to leave of his own will at any time. He finally entered into an agreement with the parties, and signed the agreement of his own free will. He does not allege that he was forced, either physically or mentally, to sign the agreement, but was only "told by his attorney that he would have to accept and sign the settlement agreement since there was verbal acceptance of the settlement offer by" Clarke American.[14] Of course, Mr. Mohammed's attorney was *his* agent during all these proceedings – so any improper behavior by the attorney (which, to the court's mind, seems quite unlikely) could not serve as a basis for setting aside the settlement agreed to the detriment of Clarke American. Indeed, Mr. Mohammed has proven himself quite capable and competent in

---

[13] *See Miller v. Celebration Mining Co.*, 29 P.3d 1231, 1235 (Utah 2001) ("[T]here must be a misrepresentation, . . . the misrepresentation must have been either fraudulent or material, . . . the misrepresentation must have induced the recipient to make the contract, . . . and . . . the recipient must have been justified in relying on the misrepresentation."); *see also Bennett v. Coors Brewing Co.*, 189 F.3d 1221, 1229 (10th Cir. 1999).

[14] Mr. Mohammed's Objection to the Settlement Agreement, at 2.

this litigation by completing and filing numerous documents with the court up to the point.

Finally, if these sorts of claims could serve as a basis for undoing a valid settlement agreement, then it would be difficult for the settlement process to operate.  A party wishing, for tactical reasons, to undo a settlement could simply allege "coercion" and upset the whole agreement.  Such claims should have some real substance before a settling party is put to the burden of responding.  No such substantive claims are presented here.

For all these reasons, the court OVERRULES Mr. Mohammed's objection to the mediation agreement and DENIES Mr. Mohammed's request to void the mediation agreement. Additionally, the court DENIES Mr. Mohammed's requests to amend his complaint or add additional claims to that complaint, as no showing has been made that these new claims would materially alter any of the court's conclusions.  Finally, the court GRANTS the joint stipulation filed by both parties, and signed by both parties, dismissing this case with prejudice, with both parties to bear their own costs and attorneys' fees and DENIES AS MOOT Clarke American's request to bifurcate consideration of Mr. Mohammed's various motions.  The Clerk's Office is directed to close the case.

DATED this 24th day of March, 2006.

BY THE COURT:

_____
Paul G. Cassell
United States District Judge